IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT J. MENDEZ,<br>                Plaintiff,<br><br>vs.<br><br>ALEGENT CREIGHTON CLINIC, a nonprofit corporation; and KELLI DOLL, an individual,<br>                Defendants. | **8:20CV86**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56, Filing No. 35. This is an action for reverse gender discrimination under Title VII of the Civil Rights Act as amended, 42 U.S.C. § 2000e et seq. Filing No. 15, Amended Complaint. Plaintiff claims he was discharged because of his male gender. Defendants contend there is no evidence to support any of the plaintiff's claims.

**BACKGROUND**

Plaintiff was the Director of Hospital Medicine at Alegent Health, a/k/a CHI. Defendant Kelli Doll was a nurse practitioner and subordinate to the plaintiff. Doll reported to Alegent Human Resources that plaintiff made her uncomfortable. Following an investigation, Alegent terminated plaintiff. Plaintiff admits his inappropriate behavior, including discussions with Doll regarding extramarital affairs and sexual encounters, and he suggested that he and Doll use technology to make their phone calls untraceable. He additionally discussed "manscaping" and how often Doll shaved. Plaintiff admits this occurred and that it was not appropriate. Filing No. 36-2, Ex. A, Pl. Dep. 167:17-168:13,

Dep. Ex. 25. Plaintiff also showed up at Doll's office unannounced and asked to see her every day for the following week. *Id.*, Ex. A, Pl. Dep. 167:17-168:13, Dep. Ex. 25.

Doll complained to Lisa Zeis in HR about all of these concerns. Zeis then alerted plaintiff's supervisor, COO Keith Jankuski, and they met with plaintiff. Plaintiff admitted to these interactions. At this meeting, there was a discussion regarding whether to move plaintiff to a different location. Jankuski and Zeis then met with Doll who never wavered in her assertions regarding plaintiff. Doll provided a phone log showing over 43 calls, text messages and emails from plaintiff's military account. Filing No. 36-4, Ex. C, Zeis Decl. ¶¶ 8, 11, 12, Tabs 2, 3, 4; Ex. B, Jankuski Decl. ¶ 10. Thereafter, plaintiff approached Jankuski and stated Doll had told him about a prior affair (which Doll had already shared with Zeis and Jankuski). Filing No. 36-2, Ex. A, Pl. Dep. 190:11-191:2). At this meeting plaintiff and Jankuski discussed the Me Too movement. Jankuski indicates the discussion was to tell plaintiff the seriousness of which Alegent takes such allegations by a subordinate employee. Plaintiff argues it is gender discrimination.

Specifically, plaintiff complains that Doll complained about him so that her husband could take his job; and second, he claims Alegent violated Title VII based on gender because his boss, also the COO, once referred to the Me Too Movement. Defendants contend that plaintiff was in a senior leadership position, was a leader, and was expected to model Alegent's core values. Alegent's Core Values are reverence, integrity, excellence, and compassion. The Corrective Action Policy allows for immediate termination for behaviors that are inconsistent with Alegent's mission and values. Filing No. 36-2, A, Pl. Dep. 206:23-207:3, 208:22-210:6, Dep. Ex. 20, 29. Further, plaintiff was an at-will employee.

Following these meetings, Jankuski terminated plaintiff.

**STANDARD OF REVIEW**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint*, 736 F.3d 1134, 1136 (8th Cir. 2013). "Summary judgment is not disfavored and is designed for 'every action.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 447 U.S. 317, 327 (1986)). In reviewing a motion for summary judgment, the court will view "all evidence and mak[e] all reasonable inferences in the light most favorable to the nonmoving party." *Inechien v. Nichols Aluminum, LLC*, 728 F.3d 816, 819 (8th Cir. 2013.). Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Torgerson*, 643 F.3d at 1042; and see *Briscoe v. City of St. Louis, Missouri*, 690 F.3d 1004, 1011 (8th Cir. 2012.) (stating that the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'").

When the nonmoving party bears the burden of proof at trial on a dispositive issue, the moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 325 (quoting *Adickes v.*

*S.H. Kress & Co.*, 398 U.S 144, 159 (1986)). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In response to the movants showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.,* 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [nonmovant]. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)); *see Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (stating "[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment) (quoting *Anderson,* 477 U.S. at 247-48). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson,* 643 F.3d at 1042.

**DISCUSSION**

a. *Gender Discrimination*

Plaintiff's only evidence of gender discrimination is the reference by Jankuski to the Me Too movement. To establish a prima facie case of gender discrimination under Title VII, Plaintiff must show:

(1) he is a member of a protected group; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) the facts support an inference of unlawful gender discrimination. *Delgado v. GGNSC Grand Island Lakeview LLC*, 259 F. Supp. 3d

991, 1005 (D. Neb. 2017) (citing *Wells v. SCI Mgm't, L.P.*, 469 F.3d 697, 700 (8th Cir. 2006)). Further, the burden is on the plaintiff to show circumstances that "support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015); *Tremaine v. Goodwill Indust., Inc.*, 2018 WL 2445538, at *5 (D. Neb. May 31, 2018).

The facts show that defendants conducted an investigation into Doll's claims and plaintiff participated in the same. Doll presented convincing evidence to the defendants of her allegations. While Jankuski referred to the Me Too movement during one discussion, there is no showing that this was gender discrimination.[1] "A remark by a decisionmaker, in order to show direct evidence of sex discrimination, must show a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1045–46 (8th Cir. 2011). Further, plaintiff cannot rely on "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself." *Philipp v. ANR Freight Sys., Inc.*, 61 F.3d 669, 673 (8th Cir. 1995).

Plaintiff was terminated by a man; the same man who assisted in hiring him. He was replaced by a man. Doll's husband did not apply for the position from which plaintiff was terminated. The job was eventually offered to another man, Kevin Rochford, who accepted the position. There is ample evidence of misconduct on the part of the plaintiff to justify firing him. Also, he was an at-will employee. Plaintiff has admitted to all the material facts. There simply is no credible evidence that plaintiff's discharge was based

---

[1] *See Doe v. Cummins*, 662 F. App'x 437, 453 (6th Cir. 2016) (disciplinary system biased toward alleged victims does not equate to gender bias because victims can be either male or female).

5

on gender.² Plaintiff has failed to make a prima facie case of employment discrimination. There is no direct evidence of gender discrimination, nor is there circumstantial evidence that might indicate gender discrimination, and thus, there is no need to apply the McDonnell Douglas burden-shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In addition, there is no evidence to support the prima facie case, and thus there is no evidence to support pretext. Plaintiff has offered no legitimate comparators. In fact, plaintiff offered two male comparators who, if anything, hurt plaintiff's case, as they received progressive discipline rather than discharge. The Court finds that this cause of action be dismissed for lack of any credible evidence that could be submitted to the jury.

    b. *Tortious Interference Claim*

Plaintiff contends that Doll interfered with his relationship with Alegent. It should be noted that although the plaintiff raised this issue in Count II of his Amended Complaint, Filing No. 15, he failed to address this issue in his brief in opposition to summary judgment. Accordingly, he has likely waived that issue. However, the Court reviewed the claim and finds it is without merit.

To establish a claim for tortious interference with a business relationship, plaintiff must show:

> (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an unjustified intentional act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship or expectancy was disrupted.

*Recio v. Evers*, 771 N.W.2d 121, 131 (Neb. 2009).

---

² Because there is no credible evidence of gender discrimination, the plaintiff's argument that this is a mixed theory case under Title VII is without merit.

Plaintiff is unable to make this showing.  Plaintiff has admitted his behavior was inappropriate.  As stated herein, his employment was at will.  Plaintiff's behavior caused him to lose his job, and the complaints alleged by Doll were determined to be true.  *See Recio,* 771 N.W.2d at 132-33 ("a person does not incur liability for interfering with a business relationship by giving truthful information to another." *Id.* at 133.).  There is likewise no evidence to support this claim.

THEREFORE, IT IS ORDRED THAT:

1. Defendant's' motion for summary judgment, Filing No. 35, is granted and this case is dismissed.
2. Defendants' motion to strike the reply brief of plaintiff, Filing No. 50, is denied.
3. Plaintiff's motion to file his reply brief, Filing No. 53, is denied as moot.

Dated this 20th day of July, 2021.

                                                      BY THE COURT:

                                                      s/ Joseph F. Bataillon
                                                      Senior United States District Judge